IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 02-cv-1341-EWN-MJW

UNITED STATES OF AMERICA

       Plaintiff,

v.

CITY AND COUNTY OF DENVER;
WASTE MANAGEMENT OF COLORADO, INC.;
CHEMICAL WASTE MANAGEMENT, INC.;
ADOLPH COORS COMPANY;
CONOCOPHILLIPS COMPANY, formerly, Conoco, Inc.;
METRO WASTEWATER RECLAMATION DISTRICT;
ROCHE COLORADO CORPORATION, successor to Syntex Chemicals, Inc.; and
S.W. SHATTUCK CHEMICAL CO., INC.,

       Defendants.

---

CONSENT DECREE FOR
THE LOWRY LANDFILL SUPERFUND SITE

---

TABLE OF CONTENTS

Page

I. BACKGROUND ................................................................................................. 1

II. JURISDICTION ................................................................................................ 8

III. PARTIES BOUND ......................................................................................... 8

IV. DEFINITIONS ................................................................................................ 9

V. GENERAL PROVISIONS .............................................................................. 18

VI. PERFORMANCE OF THE WORK ............................................................... 24

VII. REMEDY REVIEW ...................................................................................... 32

VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS .............. 34

IX. ACCESS AND INSTITUTIONAL CONTROLS ............................................ 37

X. REPORTING REQUIREMENTS .................................................................... 39

XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ...................... 41

XII. PROJECT COORDINATORS ...................................................................... 44

XIII. ASSURANCE OF ABILITY TO COMPLETE WORK ................................ 45

XIV. CERTIFICATION OF COMPLETION ........................................................ 48

XV. EMERGENCY RESPONSE .......................................................................... 52

XVI. PAYMENTS FOR RESPONSE COSTS ...................................................... 53

XVII. INDEMNIFICATION AND INSURANCE ................................................. 61

XVIII. FORCE MAJEURE .................................................................................. 64

XIX. DISPUTE RESOLUTION ........................................................................... 66

XX. STIPULATED PENALTIES ......................................................................... 71

XXI. COVENANTS NOT TO SUE BY PLAINTIFF ........................................... 78

XXII. COVENANTS BY SETTLING DEFENDANTS ......................................... 82

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ................................. 86

XXIV. ACCESS TO INFORMATION ........................................................................................ 88

XXV. RETENTION OF RECORDS .......................................................................................... 89

XXVI. NOTICES AND SUBMISSIONS .................................................................................... 91

XXVII. EFFECTIVE DATE/TERMINATION OF UAO ......................................................... 93

XXVIII. RETENTION OF JURISDICTION .............................................................................. 93

XXIX. APPENDICES ................................................................................................................. 93

XXX. COMMUNITY RELATIONS .......................................................................................... 94

XXXI. MODIFICATION ............................................................................................................ 94

XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................................. 95

XXXIII. SIGNATORIES/SERVICE .......................................................................................... 96

XXXIV. FINAL JUDGMENT ..................................................................................................... 96

## I. Background

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2).

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Lowry Landfill Superfund Site in Arapahoe County, Colorado (the "Site"), together with accrued interest, and (2) declaratory judgment of liability for future response costs paid at or in connection with response actions at or in connection with the Site.

C.      In response to the United States' complaint, the Settling Defendants asserted several defenses and filed counterclaims seeking declaratory judgment that certain of EPA's remedial action selection and implementation decisions in connection with the Site were and are inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"), were arbitrary and capricious, and were otherwise not in accordance with the law.  On September 28, 2004, the Court affirmed a prior recommendation by the magistrate judge in this matter to treat the Settling Defendants' counterclaims as affirmative defenses.

D.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Colorado (the "State") of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to the action that gave rise to this Consent Decree.

1

E.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the Department of the Interior on May 21, 2003 of negotiations with PRPs regarding the

release of hazardous substances that may have resulted in injury to the natural resources under

Federal trusteeship.

F.      The defendants that have entered into this Consent Decree ("Settling

Defendants") do not admit any liability to the Plaintiff arising out of the transactions or

occurrences alleged in the complaint, nor do they acknowledge that the release or threatened

release of hazardous substance(s) at or from the Site constitutes an imminent or substantial

endangerment to the public health or welfare or the environment.

G.      In response to a release or substantial threat of a release of hazardous substances

into the environment, at or from the Site, and pursuant to Section 105 of CERCLA, 42 U.S.C. §

9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300,

Appendix B, by publication in the Federal Register on September 21, 1984, 49 Fed. Reg. 37083.

H.      EPA conceptually divided the Site into six Operable Units ("OUs") for response

and grouped the OUs according to the media which they address: OUs 1 and 6 address shallow

groundwater, subsurface liquids, and deep groundwater; OUs 2 and 3 address landfill solids and

gas; and OUs 4 and 5 address soils, surface water and sediments.  This Consent Decree addresses

all of the OUs.

I.      Pursuant to EPA Administrative Order on Consent, Docket No. CERCLA VIII-

88-18, respondents Adolph Coors Company, Amax Research and Development, Inc., Asamera

Oil (U.S.), Inc., Conoco, Inc., Hewlett Packard Company, Lakewood Board of Water and Sewer

Commissioners, Littleton-Englewood Bi-City Wastewater Treatment Plant, Metropolitan Denver

2

Sewage Disposal District No. 1, Syntex Chemicals, Inc. and The Gates Rubber Company in September 1988 commenced a Remedial Investigation and Feasibility Study ("RI/FS") for OU 1 pursuant to 40 C.F.R. § 300.430.

J.      In December 1988, PRPs International Business Machines Corporation, Sundstrand Corporation, and S.W. Shattuck Chemical Company, Inc. joined the PRPs listed in Paragraph I of this Section, above, in the performance of the RI/FS for OU 1 pursuant to 40 C.F.R. § 300.430 and the administrative order on consent.

K.      In October 1989, PRP Honeywell, Inc. joined the respondents listed in Paragraphs I and J of this Section, above, in the performance of the RI/FS for OU 1 pursuant to 40 C.F.R. § 300.430 and the administrative order on consent.

L.      In October 1989, the administrative order on consent, relating to the performance of the RI/FS for OU 1, was amended to include OU 6.

M.      The respondents listed in Paragraphs I, J, and K above completed a Remedial Investigation ("RI") Report for OUs 1 and 6 in March 1992, and completed a Feasibility Study ("FS") Report for OUs 1 and 6 in October 1992.  EPA's approval of the RI Report for OUs 1 and 6, which includes EPA's comments on the RI Report for OUs 1 and 6, was issued on June 15, 1992.  EPA's approval of the FS Report for OUs 1 and 6, which includes EPA's comments on the FS Report for OUs 1 and 6, was issued on November 4, 1992.

N.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action for OUs 1 and 6 on November 25, 1992 in The Denver Post and the Rocky Mountain News.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial

action for OUs 1 and 6.  A copy of the transcript of the public meeting is available to the public

as part of the administrative record upon which the Regional Administrator based the selection of

a response action.

O.       In July 1990, pursuant to the EPA Administrative Order on Consent, Docket No.

CERCLA VIII-90-01, Settling Defendants City and County of Denver, Waste Management of

Colorado, Inc. and Chemical Waste Management, Inc. commenced an RI/FS for OUs 2 and 3

pursuant to 40 C.F.R. § 300.430.

P.       EPA's approval of the RI Report for OUs 2 and 3, which includes EPA's

comments on the RI Report for OUs 2 and 3, was issued on June 1, 1993.  EPA's approval of the

FS Report for OUs 2 and 3, which includes EPA's comments on the FS Report for OUs 2 and 3,

was issued on May 6, 1993.

Q.       In March 1991, pursuant to EPA Administrative Order on Consent, Docket No.

CERCLA VIII-91-04, Settling Defendants City and County of Denver and Metro Wastewater

Reclamation District (formerly known as Metropolitan Denver Sewage Disposal District No. 1)

commenced an RI/FS for OUs 4 and 5 pursuant to 40 C.F.R. § 300.430.

R.       EPA's approval of the RI Report for OUs 4 and 5, which includes EPA's

comments on the RI Report for OUs 4 and 5, was issued on February 17, 1993.  EPA's approval

of the FS Report for OUs 4 and 5, which includes EPA's comments on the FS Report for OUs 4

and 5, was issued on May 18, 1993.

S.       Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of

the completion of the FS and of the proposed plan for remedial action for OUs 2, 3, 4, and 5 on

September 4, 1993 in The Denver Post and the Rocky Mountain News.  EPA provided an

opportunity for written and oral comments from the public on the proposed plan for remedial

action for OUs 2, 3, 4, and 5.  A copy of the transcript of the public meeting is available to the

public as part of the administrative record upon which the Regional Administrator based the

selection of the response action.

   T.  The decision by EPA on the remedial action to be implemented at the Site is

embodied in a final Record of Decision executed on March 10, 1994 (the "1994 ROD").  The

State gave its concurrence on the 1994 ROD.  EPA issued minor modifications to the 1994 ROD

on August 7, 1995, March 21, 1996, May 8, 2001 and September 30, 2002 (collectively, the

"Minor Modifications").  EPA also issued two Explanations of Significant Differences

(collectively, the "ESDs") modifying the 1994 ROD, one in August 1995 and another in October

1997.

   U.  EPA issued Administrative Order for Remedial Design/Remedial Action, EPA

Docket No. CERCLA VIII-95-05 (the "UAO"), to, *inter alia*, Settling Defendants Adolph Coors

Company, Chemical Waste Management, Inc., City and County of Denver, Conoco, Inc. (now

ConocoPhillips Co.), Metro Wastewater Reclamation District, S.W. Shattuck Chemical

Company, Syntex Chemicals, Inc. (now Roche Colorado Corp.) and Waste Management of

Colorado, Inc.  The UAO, which became effective on December 19, 1994, required the

respondents to implement the remedy selected in the 1994 ROD.  Settling Defendants City and

County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management,

Inc., are performing the remedy on behalf of themselves and certain other respondents to the

UAO, and based upon information available to EPA as of the date the Assistant Regional

Administrators signed this Consent Decree, are in substantial compliance with the requirements of the UAO.

V.     In accordance with Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and Section 300.430(f)(4)(ii) of the NCP, 40 C.F.R. § 300.430(f)(4)(ii), EPA issued its Five-Year Review Report for the Site on September 28, 2001, which was supplemented by the First Addendum to the Five-Year Review Report dated September 30, 2002.

W.     In the 1994 ROD, EPA selected for the area of the Site known as the former tire pile area ("FTPA") a remedy that called for excavation of waste pits in the FTPA to remove surface and subsurface drums, associated free liquids, and other visible contamination to the extent practicable.  During the excavation of the waste pits in the FTPA, conditions developed that presented unacceptable risks to workers.  The City and County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management, Inc. requested, and EPA granted, permission to suspend work in the FTPA.  The City and County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management, Inc. considered alternative technologies for implementing the FTPA remedy selected in the 1994 ROD and performed pilot scale testing of the effectiveness and implementability of thermal technology at one of the FTPA waste pits.

X.     Following the completion of the pilot scale test, the City and County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management, Inc. prepared a Focused FS re-evaluating the effectiveness, implementability, and cost of the remedy selected in the 1994 ROD for the FTPA and two remedial alternatives.  In response, EPA requested the City and County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management,

Inc. to prepare a fully developed FS comparing the remedy selected in the 1994 ROD for the FTPA with additional remedial alternatives using the nine criteria specified in the NCP for detailed analysis of remedial alternatives.

Y.      Settling Defendants the City and County of Denver, Waste Management of Colorado, Inc. and Chemical Waste Management, Inc. submitted an FS report for the FTPA waste pit Remedy that was approved by EPA on December 30, 2004.  Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion and availability of the FS and of the proposed plan for remedial action for the FTPA waste pits on May 24, 2005, in The Denver Post and the Rocky Mountain News.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action for the FTPA waste pits.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

Z.      On August 12, 2005, EPA issued an amendment to the 1994 ROD ("ROD Amendment") regarding the FTPA waste pits.  The State gave its concurrence on the ROD Amendment.  The ROD Amendment includes a responsiveness summary to the public comments on the proposed plan for the FTPA waste pits.

AA.     Based on the information presently available to it, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

BB.     Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected in the 1994 ROD, as amended by the Minor Modifications, the ESDs and the ROD

Amendment, and the Work to be performed by the Settling Defendants under this Consent

Decree shall constitute a response action taken or ordered by the President.

CC.    The Parties recognize, and the Court by entering this Consent Decree finds, that

this Consent Decree has been negotiated by the Parties in good faith, that implementation of this

Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated

litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public

interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has

personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent

Decree and the underlying complaint, the Settling Defendants waive all objections and defenses

that they may have to jurisdiction of the Court or to venue in this District.  The Settling

Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to

enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon

the Settling Defendants and their respective successors and assigns.  Any change in ownership or

corporate status of a Settling Defendant including, but not limited to, any transfer of assets or

real or personal property, shall in no way alter such Settling Defendant's responsibilities under

this Consent Decree.

8

3.      The Work Settling Defendants shall maintain a copy of this Consent Decree at the Site at the location identified in the SOW and notify each of their contractors that the Consent Decree is available for the contractor's review at the Site.   The Work Settling Defendants shall be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.   With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Work Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

IV.  DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.   Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated herein, the following definitions shall apply:

"Assistant Regional Administrators" shall mean the Assistant Regional Administrator for the Office of Ecosystems Protection and Remediation, EPA Region 8, and the Assistant Regional Administrator for the Office of Enforcement, Compliance, and Environmental Justice, EPA Region 8.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq*.

9

"Consent Decree" shall mean this Decree and all appendices attached hereto and listed in Section XXIX (Appendices).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Covenant Beneficiary" shall mean the persons listed in Appendix G hereto, which have executed a covenant beneficiary election form and provided an original copy to the United States Department of Justice and a copy to the Work Settling Defendants at the addresses listed in Section XXVI (Notices and Submissions).

"Covenant Beneficiary Election Form" shall mean the form attached hereto as Appendix H.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 113.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Explanations of Significant Differences" or "ESDs" shall mean the Explanations of Significant Differences relative to the March 10, 1994 Record of Decision issued by EPA in August 1995 and October 1997.

"Fiscal Year" shall mean the period of time from October 1st of one calendar year through September 30th of the following calendar year.

"Former Tire Pile Area" or "FTPA" shall mean that portion of the Site, approximately 54 acres in size, located in and around the areas where tires were formerly stockpiled before they were later shredded.  The FTPA is generally depicted on page 11-19 of the 1994 ROD.

"FTPA Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 13 of this Consent Decree and approved by EPA, and any amendments thereto.

"Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs in monitoring and supervising the Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing or developing plans, reports and other items submitted pursuant to this Consent Decree, as well as verifying the Work, or otherwise implementing and overseeing this Consent Decree; however, Future Oversight Costs do not include the costs incurred by the United States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV (Emergency Response) and Paragraph 92 of Section XXI (Work Takeover), or the costs incurred by the United States in enforcing the terms of this Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, State Costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access

11

and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV(Emergency Response) and Paragraph 92 of Section XXI (Work Takeover).  Future Response Costs shall include Interim Response Costs and all Interest on those Past Response Costs the Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from the date the motion to enter this Consent Decree was filed with the Court to the date of entry of this Consent Decree.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between January 1, 2005 and the Effective Date, or (b) incurred prior to the Effective Date but paid after the Effective Date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"Lowry Trust Fund" shall mean the Lowry Environmental Protection/Cleanup Trust Fund established by the City and County of Denver, Chemical Waste Management, Inc. and Waste Management of Colorado, Inc. on March 24, 1993.

"Lowry RD/RA Special Account" shall mean special account  #0808 in the EPA Hazardous Substance Superfund.

"Lowry Settlement Special Account" shall mean the special account established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), to receive

payments for Past and Future Response Costs paid pursuant to this Consent Decree.  The "Lowry Settlement Special Account" shall consist of two subaccounts:  (a) the Future Oversight Costs Subaccount, which shall not contain more than two million, five hundred thousand dollars ($2,500,000) and may be retained and used by EPA to conduct or finance response actions at or in connection with the Site or be transferred by EPA to the EPA Hazardous Substance Superfund; and (b) the Further Response Action Subaccount, which may contain any amount of money but shall only be used by EPA to conduct or finance: (i) further response actions as described in Paragraph 19; (ii) additional response actions as described in Paragraph 91.h.; and/or (iii) Work takeover as described in Paragraph 92; or to be transferred by EPA to the EPA Hazardous Substances Superfund.  EPA may deposit all or a portion of any payment for Past or Future Response Costs paid pursuant to this Consent Decree into either or both subaccounts of the "Lowry Settlement Special Account," provided that the balance of the Future Oversight Costs Subaccount does not exceed two million, five hundred thousand dollars ($2,500,000); however, EPA shall not transfer funds from the Further Response Action Subaccount to the Future Oversight Costs Subaccount.  The use of funds from either subaccount of the Lowry Settlement Special Account by EPA shall not in any way affect the obligation of the Settling Defendants to reimburse Future Response Costs as provided in this Consent Decree.

"Minor Modifications" shall mean the Minor Modifications of the March 10, 1994 Record of Decision that were issued by EPA on August 7, 1995, March 21, 1996, May 8, 2001 and September 30, 2002.

"Municipal sewage sludge" shall mean any solid, semi-solid, or liquid residue removed during the treatment of municipal waste water or domestic sewage and may include residue

13

removed, all or in part, during the treatment of wastewater from manufacturing or processing operations, provided that such residue has essentially the same characteristics as residue removed during the treatment of domestic sewage.

"Municipal solid waste" shall mean household waste and solid waste collected from non-residential sources that is essentially the same as household waste.  While the composition of such wastes may vary considerably, municipal solid waste generally is composed of large volumes of non-hazardous substances (e.g., yard waste, food waste, glass, and aluminum) and can contain small amounts of other wastes as typically may be accepted in RCRA Subtitle D landfills.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to operate, maintain and monitor the effectiveness of the Remedial Action as required under the operation and maintenance and/or monitoring plans and manuals submitted by the Work Settling Defendants and approved or developed by EPA pursuant to the UAO or this Consent Decree and the Statement of Work (SOW).

"Owner Settling Defendant" shall mean the Defendant the City and County of Denver.

"Other Responsible Parties" shall mean the responsible parties identified in Appendix F.

"Other Settling Defendants" shall mean those parties identified in Appendix E, except the City and County of Denver, Waste Management of Colorado, Inc., and Chemical Waste Management, Inc.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through December 31, 2004, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards for, and other measures of achievement of, the remedial action objectives of the Remedial Action, as set forth in Section 11 of the 1994 ROD (as modified by the Minor Modifications, the ESDs and the ROD Amendment) and Section 1.3 of the SOW.

"Plaintiff" shall mean the United States.

"Principals" shall mean an official of the City and County of Denver and responsible corporate officer(s) of Settling Defendants Waste Management of Colorado, Inc. and Chemical Waste Management, Inc., or their designees.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site and all attachments thereto, signed on March 10, 1994 by the Regional Administrator, EPA Region 8, (the "1994 ROD") as later modified by the Minor Modifications, the ESDs and the ROD Amendment.  Unless otherwise stated, all references to the "ROD" in Sections II through XXXIV of this Consent Decree shall mean the 1994 ROD, as modified by the Minor

Modifications, the ESDs, and the ROD Amendment.  The 1994 ROD, the Minor Modifications, and the ESDs are attached as Appendix A.  The ROD Amendment is attached as Appendix B.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, that the Settling Defendants have performed under the UAO, or are undertaking to perform pursuant to this Consent Decree in order to implement the ROD in accordance with the SOW and the final FTPA Remedial Action Work Plan , and other plans approved by EPA.

"ROD Amendment" shall mean the Amendment of the 1994 ROD issued by EPA on August 12, 2005.  The ROD Amendment is attached as Appendix B.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix E.  "Settling Defendants" include the Work Settling Defendants, the Owner Settling Defendant, and the Other Settling Defendants.

"Site" shall mean the Lowry Landfill Superfund Site, encompassing approximately five hundred eight (508) acres, located in an unincorporated area of Arapahoe County, Colorado, near the intersection of East Hampden Avenue and Gun Club Road, which consists of the western three-quarters of Section 6, Township 5 South, Range 65 West, and extending northward into the extreme southern portion of Section 31, Township 4 South, Range 65 West, as generally depicted on the map attached hereto as Appendix D.  The street address for the Site is 3500 South Gun Club Road, Denver, Colorado.

"State" shall mean the State of Colorado.

"State Costs" shall mean all costs, including direct and indirect costs, including but not limited to payroll costs, contractor costs, travel costs, and laboratory costs that the State incurs in

reviewing or developing plans, reports, and other items pursuant to this Consent Decree, verifying the Work, or otherwise assisting EPA with implementing or overseeing this Consent Decree; provided, however, that "State Costs" shall not include any costs incurred by the State with respect to this action, or in any judicial or administrative enforcement action or proceeding initiated by the State, or in which the State is a plaintiff, co-plaintiff, third-party plaintiff, petitioner, or party intervener, or any costs incurred by the State to research, prepare, file and appear in connection with, an amicus brief in this action or any other action, related to (i) the Site, (ii) performance of the Work, or (iii) this Consent Decree.

"Statement of Work" or "SOW" shall mean the statement of work for completing implementation of the Remedial Action, performing Operation and Maintenance at the Site, reporting, and performing other support activities as set forth in the document attached as Appendix C to this Consent Decree, as such document may be modified from time to time in accordance with Paragraph 15 of this Consent Decree.

"Supervising Contractor(s)" shall mean the principal contractor(s) retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Unilateral Administrative Order" or "UAO" shall mean Administrative Order for Remedial Design/Remedial Action, Docket No. CERCLA VIII-95-05, issued by EPA on November 18, 1994, effective on December 19, 1994.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.

§ 6903(27); (4) any "hazardous substance" or "hazardous waste" under Section 25-15-101 of the Colorado Revised Statutes ("CRS"); and (5) any "solid waste" under Section 30-20-101(6) of the CRS.

"Work" shall mean all activities the Work Settling Defendants are required to perform, or otherwise agree to perform, under this Consent Decree, except those required by Section XXV (Retention of Records).

"Work Settling Defendants" shall mean the City and County of Denver, Chemical Waste Management, Inc. and Waste Management of Colorado, Inc.

V. GENERAL PROVISIONS

5.      Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment at the Site by the implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of the Plaintiff and the Settling Defendants against each other, as provided in this Consent Decree.

6.      Commitments by the Settling Defendants.

a.      The Work Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by the Work Settling Defendants and approved by EPA pursuant to the UAO or this Consent Decree.  The Work Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

b.      The obligations of the Work Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one or more of the Work Settling Defendants to implement the requirements of this Consent Decree, the remaining Work Settling Defendants shall complete all such requirements.

c.      If EPA notifies the Work Settling Defendants that it intends to assume performance of all or any portion of the Work pursuant to Paragraph 92, then after providing such notice, EPA may direct the Other Settling Defendants to commence financing and performing all or a portion of the Work identified in the notice (the "Takeover Work") only if:

(1)      the Work Settling Defendants did not invoke dispute resolution within fifteen (15) days after receiving notice regarding EPA's determination to assume performance of the Takeover Work;

(2)      the Work Settling Defendants invoked dispute resolution within fifteen (15) days after receipt of such notice, EPA prevailed in the final resolution of the dispute, and the final resolution of the dispute, or any settlement of the dispute, does not prohibit EPA from issuing a directive to the Other Settling Defendants with regard to the Takeover Work or provide for Work Settling Defendants to perform the Takeover Work; or

(3)      regardless of the status of dispute resolution, the Work Settling Defendants have failed to pay when due under Paragraph 58 Future Response Costs incurred by the United States for the Takeover Work or have failed to comply with Paragraph 59 regarding the payment of contested Future Response Costs incurred by the United States for Takeover

Work into an escrow account if such contested Future Response Costs exceed twenty-five thousand dollars ($25,000).

        d.      Not more than sixty (60) days after receipt of a written directive signed by the Assistant Regional Administrators in accordance with Subparagraph 6.c., the Other Settling Defendants shall commence financing and performing all or any portion of the Takeover Work assigned to them by EPA as if the Other Settling Defendants were Work Settling Defendants under this Consent Decree.  Notwithstanding any other provision of this Consent Decree, only the Work Settling Defendants shall be liable for any stipulated penalties incurred under this Consent Decree relating to their performance or non-performance of the Work.  Notwithstanding any other provision of this Consent Decree, only the Other Settling Defendants shall be liable for stipulated penalties incurred with respect to Takeover Work that has been assigned to the Other Settling Defendants under this Subparagraph.

        e.      In the event that the Work Settling Defendants fail to pay Past Response Costs within thirty (30) days after the Effective Date, fail to pay the amount of uncontested Future Response Costs within sixty (60) days after receipt of the bill, or fail to pay when due the amount of Future Response Costs due after final resolution of a dispute regarding contested response costs, EPA shall notify the Other Settling Defendants and send them an accounting for such amount.  The Other Settling Defendants shall pay such amount within sixty (60) days after receiving the accounting from EPA, unless the amount has been paid by Work Settling Defendants prior to expiration of the sixty (60) day period.  Notwithstanding any other provision of this Consent Decree, only the Work Settling Defendants shall be liable for any stipulated penalties incurred under Paragraph 77.b.(1) – (3) as a result of the Work Settling Defendants'

failure to timely pay Past or Future Response Costs.  The Settling Defendants, including the

Work Settling Defendants, shall be jointly and severally liable for any stipulated penalties

incurred under Paragraph 77.b.(1) - (3) after the Other Settling Defendants become obligated to

pay Past or Future Response Costs pursuant to this Subparagraph.

> f.      The obligations of the Other Settling Defendants to finance and perform

the Work under Subparagraph 6.d., and to pay amounts owed the United States under

Subparagraph 6.e., are joint and several.  In the event of the insolvency or other failure of any

one or more of the Other Settling Defendants to implement the requirements of this Consent

Decree pursuant to Subparagraph 6.d. or 6.e., the remaining Other Settling Defendants shall

complete all such requirements.

> 7.      <u>Compliance With Applicable Law</u>.  All activities undertaken by the Settling

Defendants pursuant to this Consent Decree shall be performed in accordance with the

requirements of all applicable federal and state laws and regulations.  The Work Settling

Defendants shall also comply with all applicable or relevant and appropriate requirements of all

federal and state environmental laws as set forth in the ROD and the SOW.  The activities

conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be

consistent with the NCP.

> 8.      <u>Permits.</u>

> a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and

Section 300.400(e) of the NCP, 40 C.F.R. § 300.400(e), no permit shall be required for any

portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in

very close proximity to the contamination and necessary for implementation of the Work).

Where any portion of the Work that is not on-site requires a federal or state permit or approval, the Work Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain and/or retain all such permits or approvals.

b.     The Work Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     <u>Notice to Successors-in-Title.</u>

a.     Within fifteen (15) days after the Effective Date, the Owner Settling Defendant shall submit to EPA for review and approval, a notice to be filed with the Clerk and Recorder's Office of Arapahoe County, State of Colorado, which shall provide notice to all of Owner Settling Defendant's successors-in-title that the Site is subject to this Consent Decree. Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court.  The Owner Settling Defendant shall file the notice for recording with the Clerk and Recorder's Office of Arapahoe County, State of Colorado within fifteen (15) days after receipt of EPA's approval of the notice.  The Owner Settling Defendant shall provide EPA with a certified copy of the notice stamped as filed for recording within ten (10) days after such notice is filed for recording.

b.      In the event of any conveyance by the Owner Settling Defendant, or its agents, successors or assigns, of an interest in the Site, the Owner Settling Defendant, or its agents, successors and assigns, shall convey the interest in a manner that ensures continued access to the Site by EPA, the State, and their authorized representatives for the purpose of carrying out the activities enumerated in Paragraph 28, Section IX (Access and Institutional Controls) of this Consent Decree.  At least thirty (30) days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls).  At least thirty (30) days prior to such conveyance, the Owner Settling Defendant conveying the interest shall also give written notice to EPA of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c.      In the event of any such conveyance, the Owner Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue

23

to be met by the Owner Settling Defendant.  In no event shall the conveyance release or otherwise affect the liability of the Owner Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of EPA.  If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

10.     Participation by the State.  EPA may, in its sole discretion, invite (an) appropriate representative(s) of the State to attend any meeting between EPA and the Settling Defendants, including, but not limited to, any meeting under Paragraph 58.a. (Payment of Future Response Costs) or Paragraph 71 (Dispute Resolution).

VI. PERFORMANCE OF THE WORK

11.     Supervising Contractor.

a.      All aspects of the Work to be performed by the Work Settling Defendants pursuant to Sections VI (Performance of the Work), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor(s) identified in the Final Site Management Plan approved by EPA pursuant to Section 2.1 of the SOW.  The duties of the Supervising Contractor(s) may be consolidated with the duties of the Project Coordinator(s) as provided in Section 2.1 of the SOW.

b.      If at any time after EPA first approves the Final Site Management Plan pursuant to Section 2.1 of the SOW, the Work Settling Defendants propose to change a Supervising Contractor, the Work Settling Defendants shall give such notice to EPA and the State, including the name, title, and qualifications of any contractor proposed to be a Supervising Contractor, and shall obtain a written authorization to proceed from EPA, after a reasonable

opportunity for review and comment by the State, before the new Supervising Contractor

performs, directs, or supervises any Work under this Consent Decree.  With respect to any

contractor proposed to be a Supervising Contractor, the Work Settling Defendants shall

demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC

E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection

and Environmental Technology Programs," (American National Standard, January 5, 1995), by

submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP

shall be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-

2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.

      c.     If EPA disapproves a proposed Supervising Contractor, EPA shall notify

the Work Settling Defendants in writing.  The Work Settling Defendants shall submit to EPA

and the State a list of contractors, including the qualifications of each contractor, that would be

acceptable to them within thirty (30) days of receipt of EPA's disapproval of the contractor

previously proposed.  EPA shall provide written notice of the names of any contractor(s) that it

disapproves and an authorization to proceed with respect to any of the other contractors.  The

Work Settling Defendants may select any contractor from that list that is not disapproved and

shall notify EPA and the State of the name of the contractor selected within twenty-one (21) days

of EPA's authorization to proceed.

      d.     If EPA fails to provide written notice of its authorization to proceed or

disapproval as provided in this Paragraph, and this failure prevents the Work Settling Defendants

from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent

Decree, the Work Settling Defendants may seek relief under the provisions of Section XVIII

(Force Majeure) hereof.

      12.    <u>Status of Completion of Remedial Action.</u>

      a.    The Remedial Action identified in Section 11 of the 1994 ROD, as

modified by the Minor Modifications, the ESDs and the ROD Amendment, consists of the

following components: (1) Institutional Controls; (2) Surface Water Removal Action;  (3)

Wetlands Mitigation; (4) Landfill Gas Extraction and Treatment System; (5) North Boundary

Barrier Wall System; (6) North Toe Extraction System; (7) Shallow Groundwater Containment,

Collection and Diversion System, East/South/West Site Boundaries; (8) MW38 Area Gradient

Control Contingency Measure; (9) New Water Treatment Plant; (10) North Face Cover; (11)

Well Abandonment Program; (12) Performance and Compliance Monitoring; (13) FTPA Middle

Waste Pit Excavation and On-Site Treatment Cell; (14) FTPA North and South Waste Pits

Product Recovery, Offsite Disposal and Final Capping; and (15) Five-Year Review.  Pursuant to

the UAO, and in a manner consistent with CERCLA, the NCP and the ROD, the Work Settling

Defendants have performed, and EPA has certified as "remedial action complete" or

"construction complete," the Remedial Action required by the ROD for each of the Remedial

Action components identified in this Subparagraph except for items (13), (14) and (15) above.

      b.    The Work Settling Defendants have partially completed construction of

the FTPA components of the Remedial Action in a manner consistent with CERCLA, the NCP

and the ROD.  The Work Settling Defendants shall complete the FTPA components of the

Remedial Action pursuant to Paragraph 13 (Completion of the Remedial Action) of this Consent

Decree.  The Work Settling Defendants have completed construction of the sitewide

groundwater monitoring network element of the Performance and Compliance Monitoring component of the Remedial Action.  The Work Settling Defendants shall complete the Groundwater Monitoring Remedial Action element of the Performance and Compliance Monitoring Remedial Action component, in accordance with Section 1.4.2.2 of the SOW.

c.       Pursuant to the UAO, and in a manner consistent with CERCLA, the NCP and ROD, the Work Settling Defendants have submitted, and EPA has approved, all of the Operation and Maintenance plans and manuals, and the integrated Quality Assurance and Quality Control ("QA/QC") plans and procedures, specifically identified in Section 1.5 of the SOW.  The Work Settling Defendants shall perform Operation and Maintenance activities at the Site pursuant to Paragraph 14 (Operation and Maintenance) of this Consent Decree.

d.       According to the Five-Year Review and First Addendum to the Five-Year Review, EPA has determined that the following Remedial Action components are "protective": (1) Well Abandonment Program; (2) Wetlands Mitigation; (3) Landfill Gas Extraction and Treatment System; (4) North Face Cover; (5) Surface Water Removal Action; and (6) Shallow Groundwater Containment, Collection and Diversion System, East/South/West Site Boundaries.

13.   Completion of Remedial Action.

a.       Within sixty (60) days after lodging, the Work Settling Defendants shall submit to EPA and the State a work plan for completing their performance of the FTPA component of the Remedial Action at the Site ("FTPA Remedial Action Work Plan").  The FTPA Remedial Action Work Plan shall provide for closure of the FTPA treatment cell, construction and implementation of the FTPA remedy for the North and South waste pits set forth in the ROD Amendment, and achievement of the FTPA Performance Standards, in

accordance with this Consent Decree, the ROD and the SOW.  After a reasonable opportunity for review and comment by the State and its approval by EPA, the FTPA Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.

b.      The FTPA Remedial Action Work Plan shall conform to the requirements of the SOW and include the following:  (1) a discussion of the remedial action objectives and Performance Standards related to the FTPA set forth in the ROD; (2) plans and specifications, and implementation schedules for NAPL removal from the south and north waste pits, and closure of the two waste pits and the treatment cell; (3) a construction quality control plan; (4) standard operating procedures, including procedures for NAPL recovery, waste characterization sampling, and decontamination; (5) requirements for conducting a preconstruction conference; and (6) reporting requirements.  The FTPA Remedial Action Work Plan shall incorporate by reference the relevant provisions of the Waste Management Plan, the Contingency Plan, and the Health and Safety Plan for Sitewide Operations and Maintenance Activities, as provided in the SOW.

c.      Upon approval of the FTPA Remedial Action Work Plan by EPA, the Work Settling Defendants shall implement the activities required under the FTPA Remedial Action Work Plan.  The Work Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved FTPA Remedial Action Work Plan in accordance with the schedule for review and approval determined by EPA pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, and excepting any on-going activities previously approved by EPA, the Work Settling Defendants shall not commence physical activities in the FTPA prior to approval of the FTPA Remedial

Action Work Plan.  The Work Settling Defendants shall continue to implement the FTPA

component of the Remedial Action in accordance with the FTPA Remedial Action Work Plan

until the Performance Standards are achieved and for so long thereafter as is otherwise required

under this Consent Decree.

14.     Site Operation and Maintenance.  The Work Settling Defendants shall perform

Operation and Maintenance of the remedy for the Site in accordance with the operation,

maintenance and monitoring plans and manuals identified in Sections 1.5 and 2.3 of the SOW to

achieve and maintain Performance Standards for so long as such performance is required under

this Consent Decree.

15.     Modification of the SOW or Related Work Plans.

a.      If EPA determines that modification of the work specified in the SOW

and/or in work plans or manuals developed pursuant to the SOW is necessary to achieve and

maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy

set forth in the ROD, EPA may require that such modification be incorporated into the SOW

and/or such work plans or manuals; provided, however, that a modification may only be required

pursuant to this Paragraph to the extent that it is within the "scope of the remedy selected in the

ROD."

b.      For the purposes of this Paragraph 15 and Paragraphs 53 and 54 only, the

"scope of the remedy selected in the ROD" is the work required to implement the technologies or

combination of technologies identified for each Operable Unit in Section 11 of the ROD in a

manner that will meet the remedial action objectives and achieve and maintain the Performance

Standards identified in Section 11 of the ROD.  The technologies identified in Section 11 of the

29

ROD are: (1) Institutional Controls; (2) Surface Water Removal Action;  (3) Wetlands Mitigation; (4) Landfill Gas Extraction and Treatment System; (5) North Boundary Barrier Wall System; (6) North Toe Extraction System; (7) Shallow Groundwater Containment, Collection and Diversion System, East/South/West Site Boundaries; (8) MW38 Area Gradient Control Contingency Measure; (9) New Water Treatment Plant; (10) North Face Cover; (11) Well Abandonment Program; (12) Performance and Compliance Monitoring; (13) FTPA Middle Waste Pit Excavation and On-Site Treatment Cell; (14) FTPA North and South Waste Pits Product Recovery, Offsite Disposal and Final Capping; (15) Operation and Maintenance, including Landfill Cover Regrading; (16) Contingency Measures; and (17) Five-Year Review. EPA and the Work Settling Defendants have investigated the potential presence of manmade radionuclides and other manmade radioactive materials at the Site, and, based on information and conditions at the Site known to EPA as of the date of lodging, EPA has concluded that such materials are not present at levels requiring any further investigation or remediation, and investigation and remediation of such materials are not within the "scope of the remedy selected in the ROD."

        c.      If the Work Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 73 (record review)**.**  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

        d.      The Work Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as expressly provided in this Consent Decree.

16.      The Work Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW or the FTPA Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the FTPA Remedial Action Work Plan will achieve and maintain the Performance Standards.

17.      The Work Settling Defendants shall, pursuant to the SOW, review the Waste Management Plan developed under the UAO and ensure that it includes the requirements set forth below in this Paragraph.  Until such time as the Work Settling Defendants have completed their review of the Waste Management Plan, and EPA has approved any necessary revisions thereof, the Work Settling Defendants shall comply with the Waste Management Plan approved by EPA under the UAO.

a.      The Work Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

b.      The Work Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped;

31

(3) the expected schedule for the shipment of the Waste Material; (4) the method of transportation; and (5) the route to be traveled.  The Work Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

        c.      The identity of the receiving facility and state will be determined by the Work Settling Defendants following the award of the contract for Remedial Action construction or any Operation and Maintenance activity that will involve off-Site shipment of Waste Material from the Site to an out-of-state waste management facility.  The Work Settling Defendants shall provide the information required by Paragraph 17.a. as soon as practicable after the award of the contract and no less than sixty (60) days before the Waste Material is actually shipped.

        d.      Before any pollutants, contaminants or hazardous substances are shipped from the Site to an off-site location, the Work Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3), 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440.  The Settling Defendants shall only send pollutants, contaminants or hazardous substances from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

18.    Periodic Review.  The Work Settling Defendants shall conduct studies and investigations requested by EPA, in consultation with the Work Settling Defendants, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health

and the environment at least every five years as required by Section 121(c) of CERCLA and any

applicable regulations.

19.     <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that

the Remedial Action is not protective of human health or the environment, EPA may select

further response actions for the Site in accordance with the requirements of CERCLA and the

NCP.

20.     <u>Opportunity To Comment</u>.  The Work Settling Defendants and, if required by

Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §§ 9613(k)(2) or 9617, the public, will be

provided with an opportunity to comment on any further response actions proposed by EPA as a

result of the review conducted pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and

to submit written comments for the record during the comment period.

21.     <u>Settling Defendants' Option Regarding Further Response Actions.</u>  If EPA selects

further response actions for the Site pursuant to Paragraph 19 above, and EPA determines that

the reopener conditions in Paragraph 88 or 89 (Plaintiff's Pre-Certification and Post-Certification

Reservation of Rights) have been satisfied, then the Work Settling Defendants shall:

a.      agree to perform such further response actions under this Consent Decree;

b.      refuse to perform such further response actions, in which case, the Settling

Defendants agree not to contest their liability under Section 107 of CERCLA, 42 U.S.C. § 9607,

in this action or any other action brought by Plaintiff seeking to have one or more of the Settling

Defendants perform and/or pay for such further response action except for, and not including,

any liability relating to manmade radionuclides or other manmade radioactive materials; or

c.      invoke the procedures set forth in Section XIX (Dispute Resolution) to

dispute:  (1) EPA's determination that the reopener conditions of Paragraph 88 or 89 (Plaintiff's

Pre-Certification and Post-Certification Reservation of Rights) have been satisfied; (2) EPA's

determination that the Remedial Action is not protective of human health or the environment;

and/or (3) EPA's selection of the further response actions as provided by applicable law.  If the

United States prevails in such dispute resolution, the Work Settling Defendants shall perform

such further response actions under this Consent Decree in accordance with the final resolution

of the dispute.  Disputes pertaining to whether the Remedial Action is protective or to EPA's

selection of further response actions shall be resolved pursuant to Paragraph 73 (record review).

22.     In the event that the Work Settling Defendants refuse to perform further response

actions for the Site selected by EPA pursuant to Paragraph 19 above, nothing in this Consent

Decree shall preclude the Settling Defendants from contesting any further response action

selected by EPA for the Site in this action or any other action.  However, Subparagraph 21.b.

shall preclude the Settling Defendants from contesting their liability for such further response

actions.

VIII.  Quality Assurance, Sampling, and Data Analysis

23.     The Work Settling Defendants shall, pursuant to the SOW, review each of the

monitoring plans and quality assurance project plans ("QAPPs") developed under the UAO that

pertain to the Work to be performed under this Consent Decree and ensure that each such plan

meets the requirements set forth in Paragraph 24.  Until such time as the Work Settling

Defendants have completed their review of such monitoring plans and QAPPs, and EPA has

approved any necessary revisions thereto, the Work Settling Defendants shall comply with the monitoring plans and QAPPs approved by EPA under the UAO.

24.     The Work Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998) and subsequent amendments to such guidelines upon notification by EPA to the Work Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) approved by EPA pursuant to Paragraph 23, and reviewed and approved by EPA, shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  The Work Settling Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by the Work Settling Defendants in implementing this Consent Decree.  In addition, the Work Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the relevant QAPP(s).  The Work Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval

by EPA, after opportunity for review and comment by the State, the Work Settling Defendants

may use other analytical methods that are as stringent or more stringent than the Contract-Lab-

Program-approved methods.  The Work Settling Defendants shall ensure that all laboratories

they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or

EPA-equivalent quality assurance/quality control program.  The Work Settling Defendants shall

only use laboratories that have a documented Quality System that complies with ANSI/ASQC

E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection

and Environmental Technology Programs," (American National Standard, January 5, 1995), and

"EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March

2001) or equivalent documentation as determined by EPA.  EPA may consider laboratories

accredited under the National Environmental Laboratory Accreditation Conference (NELAC) as

meeting the Quality System requirements.  The Work Settling Defendants shall ensure that all

field methodologies utilized in collecting samples for subsequent analysis pursuant to this

Consent Decree will be conducted in accordance with the procedures set forth in the relevant

QAPP(s) and Standard Operating Procedures manuals approved by EPA.

25.     Upon request, the Work Settling Defendants shall allow split or duplicate samples

to be taken by EPA and the State or their authorized representatives.  The Work Settling

Defendants shall, in the periodic status reports submitted pursuant to Paragraph 32, notify EPA

and the State not less than twenty-eight (28) days in advance of the sample collection activity to

be undertaken during the next reporting period, unless EPA agrees to accept shorter notice.  In

addition, EPA and the State shall have the right to take any additional samples that EPA or the

State deems necessary.  Upon request, EPA and the State shall allow the Work Settling

Defendants to take split or duplicate samples of any samples they take as part of EPA's oversight of the Work Settling Defendants' implementation of the Work.

26.     The Work Settling Defendants shall submit to EPA and the State, in or together with the periodic status reports submitted pursuant to Paragraph 32, the electronic results of all sampling and/or tests or other data obtained or generated by or on behalf of the Work Settling Defendants with respect to the Site and/or implementation of this Consent Decree, unless otherwise provided in the SOW or the relevant work plan.

27.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

28.     Commencing on the date of lodging of this Consent Decree, the Work Settling Defendants shall provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Site and any other property owned or controlled by the Work Settling Defendants where access is needed for the purpose of conducting any activity related to this Consent Decree, including, but not limited to, the following activities: (1) monitoring the Work; (2) verifying any data or information submitted to the United States or the State; (3) conducting investigations relating to contamination at or near the Site; (4) obtaining samples; (5) assessing the need for, planning, or implementing additional response actions at or near the Site; (6) assessing implementation of quality assurance and quality control practices as defined in the approved work plans; (7) implementing the Work

pursuant to the conditions set forth in Paragraph 92 (Work Takeover) of this Consent Decree; (8) inspecting and copying records, operating logs, contracts, or other documents maintained or generated by the Settling Defendants or their agents, consistent with Section XXIV (Access to Information); (9) assessing the Settling Defendants' compliance with this Consent Decree; and (10) determining whether the Site or other property is being used in a manner that is prohibited or restricted as described in Paragraph 29 hereof.

29.     The Work Settling Defendants shall refrain from using the Site, or other property owned or controlled by the Work Settling Defendants, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedy for the Site.  The Work Settling Defendants have submitted, and EPA, in consultation with the State, has approved, the Final Institutional Controls Plan for the Site dated September 19, 2002.  In accordance with the Plan, the Owner Settling Defendant has recorded with the Clerk and Recorder's Office for Arapahoe County, the Amended Declaratory Statement of Environmental Covenants to Run with Land for Section 6 and a Portion of Section 31 of the Lowry Landfill (the "Environmental Covenants") with respect to substantially all of the Site.  The Environmental Covenants run with the land and prohibit use of the Site in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures performed or to be performed pursuant to this Consent Decree.  The Settling Defendants shall not use the Site in any manner that is inconsistent with the land and water use restrictions set forth in the Environmental Covenants.  The Environmental Covenants are enforceable by the United States, the State and the Work Settling Defendants, among others.

30.     The Final Institutional Controls Plan describes local zoning ordinances, development restrictions, and other governmental controls and restrictions that further support the remedy for the Site.  If EPA determines that additional land or water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure noninterference therewith, then the Work Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls, subject to their right to invoke the procedures of Section XIX (Dispute Resolution), and in any event, shall not oppose EPA's efforts to secure such governmental controls.

31.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

32.     In addition to any other requirement of this Consent Decree, and in accordance with the schedule and any other reporting specifications set forth in the SOW, the Work Settling Defendants shall submit to EPA and the State periodic written reports, which shall include: (1) a summary of activities conducted during the reporting period for Remedial Action and Operation and Maintenance; (2) an updated database of WTP effluent, environmental monitoring data, and early warning monitoring data; (3) an evaluation of groundwater compliance; (4) an evaluation of effectiveness of groundwater containment features; (5) an evaluation of surface water compliance; (6) an evaluation of landfill gas system compliance; (7) a description of problems

encountered during the reporting period; (8) recommendations for resolving problems encountered; and (9) a schedule of planned activities for the next two (2) reporting periods.  The Work Settling Defendants shall submit these periodic reports to EPA and the State within ninety (90) days after the end of each reporting period occurring after the Effective Date of this Consent Decree until EPA notifies the Work Settling Defendants pursuant to Paragraph 54.b.  If requested by EPA, the Work Settling Defendants shall also provide briefings for EPA and the State to discuss progress of the Work.

33.     The Work Settling Defendants shall notify EPA of any change in the schedule described in the progress report for the performance of any activity including, but not limited to, data collection and implementation of work plans, no later than seven (7) days prior to performance of the activity.

34.     Upon the occurrence of any event during performance of the Work that the Work Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. § 11004, the Work Settling Defendants shall within twenty-four (24) hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, EPA Region 8.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

35.     Within twenty (20) days of the onset of such an event, the Work Settling Defendants shall furnish to EPA a written report, signed by the Work Settling Defendants'

Project Coordinators, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within thirty (30) days of the conclusion of such an event, the Work Settling Defendants shall submit a report setting forth all actions taken in response thereto.

36.     The Work Settling Defendants shall submit to EPA and the State all plans and reports required by the SOW, the FTPA Remedial Action Work Plan, or any other approved plans, in the number and form, and in accordance with the schedules, set forth in the SOW and such plans.

37.     All reports and other documents submitted by the Work Settling Defendants to EPA (other than the periodic reports referred to in Paragraph 32) that purport to document the Work Settling Defendants' compliance with the terms of this Consent Decree shall be signed by Work Settling Defendants' Project Coordinator(s) or a Supervising Contractor.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

38.     After review of the final version of any plan, report or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall, taking into account any requirements for such plan, report or other item set forth in the SOW:  (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, and direct the Work Settling Defendants to modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing the Work Settling Defendants at least one notice of deficiency and an opportunity to cure within thirty (30) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved

due to material defects and the deficiencies in the submission under consideration show a bad faith lack of effort to submit an acceptable deliverable.

39.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 38 (a), (b), or (c), the Work Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 38 (c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, if applicable, as provided in Section XX (Stipulated Penalties).

40.     <u>Resubmission of Plans.</u>

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 38 (d), the Work Settling Defendants shall, within thirty (30) days, or such longer or shorter time as may be specified in the SOW, or within fourteen (14) days if EPA determines that such shorter time is necessary to meet exigent circumstances, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the period specified for resubmission but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 41 and 42.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 38 (d), the Work Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-

deficient portion of a submission shall not relieve the Work Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

41.     In the event that EPA disapproves a resubmitted plan, report or other item, or portion thereof, EPA may again require the Work Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs of this Section.  EPA also retains the right to modify or develop the plan, report or other item as provided in the preceding Paragraphs.  The Work Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

42.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, the Work Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Work Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

43.     All final plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item

required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

44.     Prior to lodging this Consent Decree, the Work Settling Defendants have designated their Project Coordinators, and EPA has designated its Project Coordinator and an Alternate Project Coordinator for the Site, and the names, addresses and telephone numbers of each are provided in Section XXVI (Notices and Submissions).  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor shall be given to the other Parties as soon as practicable but no later than the actual day the change is made.  The Work Settling Defendants' Project Coordinators shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  The Work Settling Defendants' Project Coordinators shall not be an attorney for any of the Work Settling Defendants in this matter.  The Work Settling Defendants' Project Coordinators may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

45.     The United States may designate other representatives, including, but not limited to, EPA and State employees and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt

any Work required by this Consent Decree and to take any necessary response action upon

determining that conditions at the Site constitute an emergency situation or may present an

immediate threat to public health or welfare or the environment due to the release or threatened

release of Waste Material.

XIII.  ASSURANCE OF ABILITY TO COMPLETE WORK

46.     Within thirty (30) days after entry of this Consent Decree, the Work Settling

Defendants shall establish and maintain financial assurance of their ability to complete the Work

in the amount of forty-three million dollars ($43,000,000) as follows:

a.     The Work Settling Defendants and the Co-Trustees of the Lowry Trust

Fund hereby certify that: (i) as of the date of lodging of this Consent Decree, there are sufficient

unencumbered assets in the Lowry Trust Fund account to pay the amount stated in Paragraph 46,

and (ii) the Work Settling Defendants have the authority to fulfill their obligation under

Subparagraph 46.b.;

b.     The Work Settling Defendants shall assure that the Co-Trustees of the

Lowry Trust Fund maintain, until such time as EPA certifies completion of the Work pursuant to

Subparagraph 54.b. of this Consent Decree, sufficient unencumbered assets in the Lowry Trust

Fund account to pay the amount stated in Paragraph 46 above, or alternatively, the amount

approved by EPA pursuant to Paragraph 47; and

c.     The Work Settling Defendants shall submit to EPA annually, within thirty

(30) days after receipt of the annual Financial Statement for the Lowry Trust Fund, a signed

original letter from an independent financial accounting firm, proposed by the Work Settling

Defendants and approved by EPA, certifying that there are sufficient assets in the Lowry Trust

45

Fund account to pay the amount stated in Paragraph 46 above, or alternatively, the amount approved by EPA pursuant to Paragraph 47.

47.     If the Work Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46 after entry of this Consent Decree, the Work Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial assurance provided under this Section to the estimated cost of the remaining Work to be performed.  The Work Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the financial assurance upon approval by EPA.  In the event of a dispute, the Work Settling Defendants may reduce the amount of the financial assurance in accordance with the final administrative or judicial decision resolving the dispute.

48.     In the event that the Work Settling Defendants become unable to provide financial assurance in the form provided in Paragraph 46, the Work Settling Defendants shall notify EPA as soon as practicable and shall, within sixty (60) days of becoming aware that they cannot provide such financial assurance, obtain and present to EPA for approval one of the forms of financial assurance listed in Paragraph 49.

49.     The Work Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section.  In the event of a dispute, the Work Settling Defendants may change the form of the financial assurance only in accordance

with the final administrative or judicial decision resolving the dispute.  Alternative forms of

financial assurance acceptable to EPA include the following:

>a.      A surety bond guaranteeing performance of the Work;

>b.      One or more irrevocable letters of credit equaling the total estimated cost

of the Work;

>c.      A trust fund;

>d.      A guarantee to perform the Work by one or more parent corporations or

subsidiaries, or by one or more unrelated corporations that have a substantial business

relationship with at least one of the Settling Defendants;

>e.      A demonstration that one or more of the Settling Defendants satisfy the

requirements of 40 C.F.R. § 264.143(f); or

>f.      another form of financial assurance acceptable to EPA.

50.      If the Work Settling Defendants seek to demonstrate the ability to complete the

Work through a guarantee by a third party pursuant to Subparagraph 49.d., the Work Settling

Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. §

264.143(f).  If the Work Settling Defendants seek to demonstrate their ability to complete the

Work by means of the financial test or the corporate guarantee pursuant to Subparagraph 49.d.

or 49.e., they shall resubmit sworn statements conveying the information required by 40 C.F.R.

Part 264.143(f) annually, on the anniversary of the Effective Date.

51.      In the event that the Work Settling Defendants are required to select a new form

of financial assurance pursuant to Paragraph 48, or elect to change the form of financial

assurance provided under this Section pursuant to Paragraph 49, and EPA determines at any time

that the financial assurances provided pursuant to Paragraph 48 or 49 are inadequate, the Work

Settling Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and

present to EPA for approval one of the other forms of financial assurance listed in Paragraph 49

of this Consent Decree.  In the event of a dispute regarding financial assurance, the Work

Settling Defendants may invoke dispute resolution pursuant to Section XIX (Dispute Resolution)

and provide financial assurance in accordance with the final resolution of the dispute.

52.     The Work Settling Defendants' inability to demonstrate financial ability to

complete the Work shall not excuse performance of any activities required under this Consent

Decree.

XIV.  CERTIFICATION OF COMPLETION

53.     Completion of the Remedial Action.

a.       Prior to lodging this Consent Decree, EPA determined that the following

components of the Remedial Action for the Site are "construction complete" or "Remedial

Action complete," as set forth in Section 1.4.1 of the SOW:  (1) Institutional Controls; (2)

Surface Water Removal Action; (3) Wetlands Mitigation; (4) Landfill Gas Collection and

Treatment System; (5) North Boundary Barrier Wall System; (6) North Toe Extraction System;

(7) Shallow Groundwater Containment, Collection and Diversion System, East/South/West Site

Boundaries; (8) MW38 Area Gradient Control Contingency Measure; (9) New Water Treatment

Plant; (10) North Face Cover; (11) Well Abandonment Program; (12) Performance and

Compliance Monitoring; and (13) FTPA Middle Waste Pit Excavation and On-Site Treatment

Cell.

      b.      Within ninety (90) days after the Work Settling Defendants conclude that any component of the Remedial Action that EPA has not certified as Remedial Action complete (not including O&M) has been fully performed in accordance with this Consent Decree and has achieved the Performance Standards applicable to such component, the Work Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by the Work Settling Defendants, EPA and the State.  If, after the pre-certification inspection, the Work Settling Defendants still believe that the Remedial Action component has been fully performed in accordance with this Consent Decree and that the Performance Standards applicable to such component have been achieved, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within thirty (30) days of the inspection.  In the report, a registered professional engineer and the Work Settling Defendants' Project Coordinators shall state that the Remedial Action component has been fully performed in accordance with this Consent Decree.  The written report shall include, as appropriate, as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of a Work Settling Defendant or the Work Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that

the Remedial Action component or any portion thereof, has not been fully performed in

accordance with this Consent Decree or that the Performance Standards applicable to such

component have not been achieved, EPA shall notify the Work Settling Defendants in writing of

the activities that must be undertaken by the Work Settling Defendants pursuant to this Consent

Decree to complete performance of the Remedial Action component and achieve the

Performance Standards applicable to such component; provided, however, that EPA may only

require the Work Settling Defendants to perform such activities pursuant to this Paragraph to the

extent that such activities are within with the "scope of the remedy selected in the ROD," as that

term is defined in Subparagraph 15.b.  EPA will set forth in the notice a schedule for

performance of such activities consistent with the Consent Decree and the SOW or require the

Work Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA

Approval of Plans and Other Submissions).  The Work Settling Defendants shall perform all

activities described in the notice in accordance with the specifications and schedules established

pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set

forth in Section XIX (Dispute Resolution).

   c. If EPA concludes, based on the initial or any subsequent report requesting

Certification of Completion and after a reasonable opportunity for review and comment by the

State, that the Remedial Action component has been fully performed in accordance with this

Consent Decree and that the Performance Standards applicable to such component have been

achieved, EPA shall so certify in writing to the Work Settling Defendants.  This certification

shall constitute the Certification of Completion of the Remedial Action component for purposes

of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff).

        d.     EPA shall certify the Remedial Action complete upon having certified completion of all of the Remedial Action components identified in Subparagraph 12.a., except for Five Year Review.  Certification of Completion of the Remedial Action, or any component thereof, shall not affect the Work Settling Defendants' remaining obligations under this Consent Decree.

        54.    <u>Completion of the Work.</u>

        a.     Within ninety (90) days after the Work Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed in accordance with this Consent Decree, the Work Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by the Work Settling Defendants and EPA.  If, after the pre-certification inspection, the Work Settling Defendants still believe that the Work has been fully performed in accordance with this Consent Decree, the Work Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been fully performed in accordance with this Consent Decree.  The report shall contain the following statement, signed by a responsible corporate official of a Work Settling Defendant or the Work Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been fully performed in accordance with this Consent Decree, EPA shall notify the Work Settling Defendants in writing of the activities that must be undertaken by the Work Settling Defendants pursuant to this Consent Decree to complete the Work; provided, however, that EPA may only require the Work Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are within the "scope of the remedy selected in the ROD," as that term is defined in Subparagraph 15.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Work Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  The Work Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion by the Work Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been fully performed in accordance with this Consent Decree, EPA shall so notify the Work Settling Defendants in writing.

XV. Emergency Response

55.     In the event of any action or occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, the Work Settling Defendants shall, subject to Paragraph 56, immediately take all appropriate action

to prevent, abate, or minimize such release or threat of release, and shall immediately notify the

EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project

Coordinator.  If neither of these persons is available, the Work Settling Defendants shall notify

the Emergency Response Unit, EPA Region 8.  The Work Settling Defendants shall take such

actions in consultation with EPA's Project Coordinator or other available authorized EPA officer

and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency

Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event

that the Work Settling Defendants fail to take appropriate response action as required by this

Section, and EPA takes such action instead, the Work Settling Defendants shall reimburse EPA

for all costs of the response action not inconsistent with the NCP pursuant to Section XVI

(Payments for Response Costs).

56.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to

limit any authority of the United States:  (a) to take all appropriate action to protect human health

and the environment or to prevent, abate, respond to, or minimize an actual or threatened release

of Waste Material on, at, or from the Site; or (b) to direct or order such action, or seek an order

from the Court, to protect human health and the environment or to prevent, abate, respond to, or

minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to

Section XXI (Covenants Not to Sue by Plaintiff).

XVI.  PAYMENTS FOR RESPONSE COSTS

57.     Payments for Past Response Costs.

a.      Within thirty (30) days after the Effective Date, the Work Settling

Defendants shall pay to EPA $13,900,000 in payment for Past Response Costs.  Payment shall be

made by FedWire Electronic Funds Wire Transfer ("EFT") to the U.S. Department of Justice

account in accordance with current EFT procedures, referencing USAO File Number

2002V00495, EPA Site/Spill Number 0808-Lowry Settlement Special Account, and DOJ Case

Number 90-11-2-93/1.  Payment shall be made in accordance with instructions provided to the

Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for

the District of Colorado following lodging of the Consent Decree.  Any payments received by

the Federal Reserve Bank after 4:00 p.m. (Eastern Time) will be credited on the next business

day.

b.      At the time of payment, the Work Settling Defendants shall send notice

that payment has been made on behalf of the Settling Defendants to the United States, to EPA

and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices

and Submissions).

c.      The total amount to be paid by Setting Defendants pursuant to this

Paragraph 57 shall be deposited in the Lowry Settlement Special Account.

58.    Payments for Future Response Costs.

a.      Annually, prior to August 1, the EPA Project Manager for the Site shall

convene a meeting with the Work Settling Defendants' Project Coordinators to: (1) review

EPA's oversight activities and costs, including State oversight activities and costs, over the past

Fiscal Year; (2) review EPA's anticipated scope of future oversight, including the scope of State

oversight over the next Fiscal Year; and (3) discuss the deviations on anticipated versus actual

oversight costs over the past Fiscal Year.  In advance of the meeting, the EPA Project Manager

shall provide to the Work Settling Defendants for discussion at the meeting, a written description

of the anticipated scope of EPA project oversight, including the anticipated scope of State oversight, a written estimate of contractor costs, the estimated aggregate number of EPA employee hours and the estimated State Costs for EPA project oversight for the next succeeding EPA Fiscal Year.  At the annual meeting, EPA shall provide a summary of oversight contracts currently in place, including a description of the general scope of the work, the period of performance and the contract award amount for each contract.  After the annual meeting, if the Work Settling Defendants' Project Coordinators have unresolved concerns about EPA's anticipated scope of either EPA or State project oversight, or the estimated contractor costs, the estimated aggregate number of EPA employee hours, or the estimated State Costs, then the Work Settling Defendants' Project Coordinators shall provide a written statement of those unresolved concerns within fourteen (14) days after the meeting.  Within thirty (30) days after the Work Settling Defendants' concerns are provided in writing, the Assistant Regional Administrators and the Principals shall convene a second meeting to address those concerns.  The Assistant Regional Administrators and the Principals may, by mutual agreement, use facilitation or other non-binding alternative dispute resolution in an effort to resolve the Work Settling Defendants' concerns.  If a resolution is not achieved, then EPA shall determine the scope and estimated aggregate EPA employee hours, estimated contractor costs and estimated State Costs for future oversight for the year in question.  Nothing in this Paragraph shall prohibit EPA from undertaking any planned oversight work or from awarding or modifying contracts or assigning work under existing contracts prior to the conclusion of the process described above.

b.      If EPA intends to make a change in the scope of EPA or State oversight that will likely increase by fifty percent (50%) or more the aggregate number of EPA employee

hours spent on oversight or the amount of State Costs or contractor costs finally estimated for that year in accordance with Subparagraph 58.a., or if EPA becomes aware that the estimated EPA contractor oversight costs for any EPA Fiscal Year will likely exceed by fifty percent (50%) or more the amount of costs finally estimated for that year in accordance with Subparagraph 58.a., then EPA shall promptly notify the Work Settling Defendants and, upon request by the Work Settling Defendants, initiate the process described in Subparagraph 58.a. with regard to the estimated time or cost exceedence; provided, however, that if the Assistant Regional Administrators and the Principals are unable to resolve any concerns raised by the Work Settling Defendants with regard to the estimated time or cost exceedence, the Work Settling Defendants may, upon receiving the final accounting for such costs from EPA, invoke their right to dispute resolution with regard to the actual cost exceedence, but only as provided in Paragraph 59.

    c.  To the extent that Denver must appropriate money to pay Future Response Costs, Denver shall use information provided by EPA, including any estimates provided pursuant to Subparagraph 58.a., to seek an appropriation to pay Denver's share of Future Response Costs. The Parties to this Consent Decree recognize and acknowledge that Denver can only pay money to the United States from appropriated funds, or other funds, legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Denver obligate or pay funds to the United States in contravention of Article X, Section 20 or Article XI of the Colorado Constitution. This limitation does not in any way limit the payment obligations of the other Work Settling Defendants.

d.      The Work Settling Defendants shall pay to EPA all Future Response Costs incurred by the United States in a manner not inconsistent with the National Contingency Plan. On a periodic basis, but not less than annually, the United States shall submit to the Work Settling Defendants an accounting of Future Response Costs incurred by the United States in connection with this Consent Decree during the accounting period that are not inconsistent with the NCP.  Such costs shall include all direct and indirect response costs incurred by the United States and its contractors during the accounting period.  The annual accounting shall consist of a SCORPIOS cost summary report, or the equivalent cost summary report as determined by EPA, and all backup documentation for the report.  The backup documentation for Future Response Costs, excluding State Costs, shall include EPA time sheets and travel vouchers, contractor invoices, proofs of payment, work assignment documents, and progress reports.  The backup documentation for State Costs shall include State cooperative agreement drawdown reports and quarterly status reports.  If EPA fails to submit a timely annual accounting of Future Response Costs to the Work Settling Defendants, the United States shall not be deemed to have waived its right to recover such Future Response Costs, and the Work Settling Defendants shall not be excused from paying such Future Response Costs.

e.      Within sixty (60) days of receipt of each accounting (including backup documentation) the Work Settling Defendants shall reimburse the United States for the amount of uncontested response costs set forth in the accounting.  Payments shall be made by Federal Wire Electronic Funds Transfer ("EFT") directly to the Federal Reserve Bank in New York City with the following information:

> ABA - 021030004
>
> TREAS NYC/CTR
>
> BNF /AC 68011008
>
> Ref:  Site 0808 Lowry Settlement Special Account

Any payments received by the Federal Reserve Bank after 4:00 p.m. (Eastern Time) will be credited on the next business day.

f.      At the time of making payment, the Work Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions) referencing the EPA Site/Spill ID Number 0808-Lowry Settlement Special Account, DOJ Case Number 90-11-2-93/1 and USAO File Number 2002V00495.

g.      The total amount to be paid by the Work Settling Defendants pursuant to Subparagraph 58.d. shall be deposited in the Lowry Settlement Special Account.

59.      The Work Settling Defendants may contest payment of any Future Response Costs under Paragraph 58 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP.  Any objection to the payment of Future Response Costs shall be made in writing within sixty (60) days of receipt of the accounting together with backup documentation and shall be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, the Work Settling Defendants shall, within the sixty (60) day period for payment, pay all uncontested Future Response Costs to the United States in the manner described in Subparagraphs 58.e. and f.  If the amount of contested Future Response Costs

exceeds twenty-five thousand dollars $25,000, the Work Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Colorado and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  The Work Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs; a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established; and a copy of a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, the Work Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, within thirty (30) days after the resolution of the dispute, the Work Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Subparagraphs 58.e. and f.  If the Work Settling Defendants prevail concerning any aspect of the contested costs, the Work Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Subparagraphs 58.e. and f.; any balance remaining in the escrow account shall be disbursed to the Work Settling Defendants.  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Work Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

60.     In the event that the payments required by Paragraph 57 are not made within thirty (30) days of the Effective Date, or the payments required by Subparagraph 58.d. are not made within sixty (60) days after receipt of the accounting (including backup documentation), the Work Settling Defendants shall pay Interest on the unpaid balance.  The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date.  The Interest on Future Response Costs shall begin to accrue on the date payment was due.  The Interest shall accrue through the date of the Work Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of the Work Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX (Stipulated Penalties).  The Work Settling Defendants shall make all payments required by this Paragraph in the manner described in Subparagraphs 58.e. and f.

61.     Prior to lodging this Consent Decree, EPA established the Lowry RD/RA Special Account for funds received in settlement(s) with responsible party(ies), which account contains $_____ in funds as of the date of lodging.  EPA shall include a current accounting of the Special Account in the accounting presented to the Work Settling Defendants pursuant to Subparagraph 58.d.  In each such accounting, EPA shall charge the Special Account for all Future Oversight Costs incurred by EPA during the relevant accounting period, until such time as the funds in the Special Account received from other responsible parties, together with all interest earned on such funds, are exhausted and no balance remains.

## XVII.  INDEMNIFICATION AND INSURANCE

62.   <u>Work Settling Defendants' Indemnification of the United States.</u>

a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of the Work Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  The Work Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of the Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of the Work Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Work Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of the Work Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of the Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither the Work Settling Defendants nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give the Work Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Subparagraph 62.a. and shall consult with the Work Settling Defendants prior to settling such claim.

63.      The Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of the Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, the Work Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of the Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

64.      The Parties to this Consent Decree recognize and acknowledge that Denver can only pay money to the United States from appropriated funds, or other funds, legally available for such purpose.  Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Denver obligate or pay funds to the United States in contravention of Article X, Section 20 or Article XI of the Colorado Constitution.  This limitation does not in any way limit the indemnification obligations of the other Work Settling Defendants.

65.      No later than fifteen (15) days before commencing any Remedial Action work in the FTPA, the Work Settling Defendants shall secure, and shall maintain until the first

anniversary of EPA's Certification of Completion of the Remedial Action pursuant to

Subparagraph 53.d. of Section XIV (Certification of Completion), comprehensive general

liability insurance with limits of five (5) million dollars, combined single limit, and automobile

liability insurance with limits of one (1) million dollars, combined single limit, naming the

United States as an additional insured.  In addition, for the duration of this Consent Decree, the

Work Settling Defendants shall satisfy, or shall ensure that their contractors and subcontractors

satisfy, all applicable laws and regulations regarding the provision of worker's compensation

insurance for all persons performing the Work on behalf of the Work Settling Defendants in

furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent

Decree, the Work Settling Defendants shall provide to EPA certificates of such insurance, and

upon EPA's request, a copy of each such insurance policy that, upon request by the Work

Settling Defendants, the respective contractor or subcontractor authorizes the Work Settling

Defendants to submit to EPA.  The Work Settling Defendants shall resubmit such certificates

each year on the anniversary of the Effective Date.  If the Work Settling Defendants demonstrate

by evidence satisfactory to EPA that the contractor(s) or subcontractor(s) that will perform the

Remedial Action maintain(s) insurance that names the United States as an additional insured and

is equivalent to the general liability insurance and auto insurance described above, or such

insurance covering the same risks but in a lesser amount, then the Work Settling Defendants

need only provide the amount of such insurance that is not maintained by such contractor(s) or

subcontractor(s).  In that event, the Work Settling Defendants shall, not less than fifteen (15)

days prior to commencement of the Remedial Action work under this Consent Decree, provide to

EPA certificates of such general liability and auto insurance maintained by its Remedial Action

contractor(s), and upon EPA's request, a copy of each such general liability and auto insurance policy(ies) that, upon request by the Work Settling Defendants, the respective contractor or subcontractor authorizes the Work Settling Defendants to submit to EPA.

## XVIII. FORCE MAJEURE

66.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Work Settling Defendants, any entity controlled by the Work Settling Defendants, or the Work Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Work Settling Defendants' best efforts to fulfill the obligation.  The requirement that the Work Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

67.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Work Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Assistant Regional Administrator for Ecosystems Protection and Remediation, EPA Region 8, within forty-eight (48) hours of when the Work Settling Defendants first knew that the event might cause a delay.  Within ten (10) days thereafter, the Work Settling Defendants shall provide in writing to EPA an explanation and description of the

64

reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Work Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Work Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Work Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude the Work Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  The Work Settling Defendants shall be deemed to know of any circumstance of which the Work Settling Defendants, any entity controlled by the Work Settling Defendants, or the Work Settling Defendants' contractors knew or should have known.

68.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, then EPA will notify the Work Settling Defendants in writing of its decision.  If EPA agrees that the delay is attributable to a force majeure event, then EPA will notify the Work

Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

69.     If the Work Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than fifteen (15) days after receipt of EPA's notice.  In any such proceeding, the Work Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Work Settling Defendants complied with the requirements of Paragraphs 66 and 67, above.  If the Work Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by the Work Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.  Dispute Resolution

70.     The terms of the resolution of any dispute under the procedures in this Section shall bind all of the Parties to this Consent Decree.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

71.     Any dispute that arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations among the project managers for the respective parties to the dispute.  The period for such informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is extended by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one Party sends the other Parties a written Notice of Dispute.  If informal negotiations among the project managers fails to resolve the dispute, then the party(ies) that invoked dispute resolution shall refer the matter to the Assistant Regional Administrators and the Principals for further informal negotiations.  The Assistant Regional Administrators and the Principals may, by mutual agreement, use facilitation or other non-binding alternative dispute resolution during their informal negotiations.  The period for such informal negotiations shall not exceed twenty (20) days from the date of referral to the Assistant Regional Administrators and the Principals, unless it is extended by written agreement of the Assistant Regional Administrators and the Principals.

72.     <u>Statements of Position.</u>

a.      If the parties to a dispute cannot resolve a dispute by informal negotiations under the preceding Paragraph, the position advanced by EPA shall be considered binding unless, within fifteen (15) days after the Assistant Regional Administrators and the Principals conclude their informal negotiations, the Work Settling Defendants provide written notice to the United States of their intent to invoke formal dispute resolution on the matter, and, within forty-five (45) days after the Assistant Regional Administrators and the Principals conclude their informal negotiations, the Work Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the

matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting

that position and any supporting documentation relied upon by the Work Settling Defendants.

The Statement of Position shall specify the Work Settling Defendants' position as to whether

formal dispute resolution should proceed under Paragraph 73 or Paragraph 74.  The deadline for

submission of the written Statement of Position and/or the supporting factual data, analysis,

opinion or documentation may be extended by written agreement if the parties to the dispute

agree that additional time is necessary to draft the Statement of Position or compile the

supporting data, analysis, opinion and/or documentation.

      b.      Within thirty (30) days after receipt of the Work Settling Defendants'

Statement of Position, EPA shall serve on the Work Settling Defendants its Statement of

Position, including, but not limited to, any factual data, analysis, or opinion supporting that

position and all supporting documentation relied upon by EPA.  EPA's Statement of Position

shall include a statement as to whether formal dispute resolution should proceed under Paragraph

73 or 74.  Within fifteen (15) days after receipt of EPA's Statement of Position, the Work

Settling Defendants may submit a Reply.

      c.      If there is disagreement between EPA and the Work Settling Defendants

as to whether dispute resolution should proceed under Paragraph 73 or 74, then the parties to the

dispute shall follow the procedures set forth in the Paragraph determined by EPA to be

applicable.  However, if the Work Settling Defendants ultimately appeal to the Court to resolve

the dispute, the Court shall determine which Paragraph is applicable in accordance with the

standards of applicability set forth in Paragraphs 73 and 74.

73.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation:  (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by the Settling Defendants regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Regional Administrator, EPA Region 8, will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 73.a.  This decision shall be binding upon the Work Settling Defendants, subject only to the right to seek judicial review pursuant to Subparagraphs 73.c. and d.

c.     Any administrative decision made by EPA pursuant to Subparagraph 73.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Work Settling Defendants with the Court and served on all Parties within thirty (30) days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to the dispute to resolve it, the relief requested, and the

schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to the Work Settling Defendants' motion.

d.    In proceedings on any dispute governed by this Paragraph, the Work Settling Defendants shall have the burden of demonstrating that the decision of the Regional Administrator is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Subparagraph 73.a.; provided, however, that the Court may allow the parties to the dispute to supplement the administrative record of the dispute, to the extent that it fails to include all of the materials identified in Subparagraph 73.a.

74.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.    Following receipt of the Work Settling Defendants' Statement of Position submitted pursuant to Paragraph 72, the Regional Administrator, EPA Region 8, will issue a final decision resolving the dispute.  The Regional Administrator's decision shall be binding on the Work Settling Defendants unless, within thirty (30) days after receipt of the decision, the Work Settling Defendants file with the Court and serve on the Parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to the dispute to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to the Work Settling Defendants' motion.

b.      Notwithstanding Paragraph BB of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

75.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Work Settling Defendants under this Consent Decree not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties, if applicable to the disputed matter, shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 83. Notwithstanding the stay of payment, applicable stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Work Settling Defendants do not prevail on the disputed issue, applicable stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

76.     The Settling Defendants shall be liable to the United States for stipulated penalties in the amounts set forth in Paragraphs 77 and 78 for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by the Work Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

77.     Stipulated Penalty Amounts – Major Penalties.

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 77.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,500 | 15th through 30th day |
| $ 5,000 | 31st day and beyond |

b.     Compliance Milestones:

(1)     Failure to pay Past Response Costs within thirty (30) days after the Effective Date;

(2)     Failure to pay the amount of uncontested Future Response Costs within sixty (60) days after receipt of the bill;

(3)     Failure to pay when due the amount of Future Response Costs due after final resolution of the dispute regarding contested response costs;

(4)     Termination or suspension of performance of all or any part of required product recovery activities at the FTPA waste pit(s) except in accordance with the EPA-approved FTPA Remedial Action Workplan, or other EPA authorization;

(5)     Termination or suspension of performance of all or any part of the activities required under the Groundwater Monitoring Plan or Early Warning Monitoring Plan, except as authorized by the

Groundwater Monitoring Plan or the Early Warning Monitoring

Plan or as otherwise authorized by EPA;

(6)     Termination or suspension of performance of all or any part of the

required Landfill Gas Compliance Monitoring activities, except as

authorized by the Compliance Monitoring Plan, Landfill Gas

Remedy or as otherwise authorized by EPA;

(7)     Termination or suspension of performance of all or any part of the

required Operation and Maintenance activities, including but not

limited to operation, maintenance and monitoring of the WTP,

except as authorized by Operation and Maintenance plans and

manuals or otherwise as authorized by EPA.

78.     <u>Stipulated Penalty Amounts – Minor Penalties.</u>

a.     The following stipulated penalties shall accrue per violation per day for

any noncompliance identified in Subparagraph 78.b.:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $   500 | 1st through 14th day |
| $ 1,000 | 15th through 30th day |
| $ 1,500 | 31st day and beyond |

b.     Compliance Milestones:

(1)     Failure to submit a periodic report when due under Paragraph 32;

(2)     Failure to submit the FTPA Remedial Action Workplan when due

under Paragraph 13;

73

(3)    Failure to meet a delivery date set forth in Section 3.1 of the SOW;

(4)    Failure to perform any required activity in accordance with the requirements of any monitoring or Operation and Maintenance plan;

(5)    Failure to perform any required activity in accordance with the requirements of the FTPA Remedial Action Workplan.

79.    In the event EPA assumes performance of all or a portion of the Work pursuant to Paragraph 92 (Work Takeover), the Work Settling Defendants shall be liable for a stipulated penalty in the amount of three times the costs incurred by EPA in performing such Work or three million dollars ($3,000,000), whichever is less.

80.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the thirty-first (31) day after EPA's receipt of such submission until thirty (30) days after the date that EPA notifies the Work Settling Defendants of any deficiency and provides an opportunity to cure the deficiency; (2) with respect to a decision by the Regional Administrator, EPA Region 8, under Subparagraph 73.b. or 74.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that the Work Settling Defendants' reply to EPA's Statement of Position is received until the date that the Regional Administrator issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX

(Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

81.     Following EPA's determination that the Work Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give the Work Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Work Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Work Settling Defendants of a violation.

a.     All penalties accruing under this Section shall be due and payable to the United States within sixty (60) days of the Work Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless the Work Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). The Parties to this Consent Decree recognize and acknowledge that Denver can only pay money to the United States from appropriated funds, or other funds, legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Denver obligate or pay funds to the United States in contravention of Article X, Section 20 or Article XI of the Colorado Constitution. This limitation does not in any way limit the payment obligations of the other Work Settling Defendants.

b.     Payments shall be made by Federal Wire Electronic Funds Transfer ("EFT") directly to the Federal reserve Bank in New York City with the following information:

> ABA - 021030004
>
> TREAS NYC/CTR
>
> BNF /AC 68011008
>
> Ref:  Site 0808 Lowry Settlement Special Account

Any payments received by the Federal Reserve Bank after 4:00 p.m. (Eastern Time) will be credited on the next business day.  Copies of the wire confirmation for payments made pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions) and to:

> Region 8 Financial Management Officer/TMS
>
> 999 18th Street, Suite 300
>
> Denver, CO 80202

82.     The payment of penalties shall not alter in any way the Work Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

83.     Penalties shall continue to accrue as provided in Paragraph 80 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within fifteen (15) days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, the Work Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph 83.c. below;

c.      If the District Court's decision is appealed by any Party, the Work Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days.  Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to the Work Settling Defendants to the extent that they prevail.

84.     If the Work Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest.  The Work Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 81.

85.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of the Work Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l); provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

86.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive all or any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

### XXI. COVENANTS NOT TO SUE BY PLAINTIFF

87.     In consideration of the actions that will be performed and the payments that will be made by the Work Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 88, 89, and 91 of this Section, the United States covenants not to sue or to take administrative action against the Settling Defendants, the Covenant Beneficiaries and the Other Responsible Parties pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the Site; provided, however, that the United States' covenant not to sue the Covenant Beneficiaries and the Other Responsible Parties extends only to actions seeking reimbursement of Past Response Costs.  This covenant extends to the Settling Defendants, the Covenant Beneficiaries and the Other Responsible Parties and their respective successors and assigns, and each of their respective elected officials, officers, directors, and employees, but only to the extent that the liability of such entities, elected officials, officers, directors and employees arises: (a) solely from their status as such; and (b) from the same nucleus of facts that gave rise to the liability of the Settling Defendants, the Covenant Beneficiaries, and the Other Responsible Parties resolved under this Consent Decree.  Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 57 of Section XVI (Payments for Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of the Remedial Action by EPA pursuant to Subparagraph 53.d. of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by the Work Settling Defendants of their obligations under this Consent Decree.

88.     <u>United States' Pre-Certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel the Settling Defendants:

    a.      to perform further response actions relating to the Site, or

    b.      to reimburse the United States for additional costs of response

if, prior to Certification of Completion of the Remedial Action:

    a.      conditions at the Site, previously unknown to EPA, are discovered, or

    b.      information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information, together with any other relevant information, indicates that the Remedial Action is not protective of human health or the environment.

89.     <u>United States' Post-Certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel the Settling Defendants:

    a.      to perform further response actions relating to the Site, or

    b.      to reimburse the United States for additional costs of response

if, subsequent to Certification of Completion of the Remedial Action:

    a.      conditions at the Site, previously unknown to EPA, are discovered, or

    b.      information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information, together with other relevant information, indicate that the Remedial Action is not protective of human health or the environment.

90.     For purposes of Paragraph 88, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of lodging of this Consent Decree, and as set forth in the ROD, the administrative record supporting the ROD or the EPA site file for the Site prior to the date of lodging of this Consent Decree.  For purposes of Paragraph 89, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the EPA site file for the Site, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

91.     <u>General reservations of rights</u>.  The United States reserves, and this Consent Decree is without prejudice to, all rights against the Settling Defendants with respect to all matters not expressly included within United States' covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the Settling Defendants with respect to:

a.      claims based on a failure by the Work Settling Defendants to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

80

c.      liability based upon the Settling Defendants' ownership or operation of the Site, if Waste Material is transported to the Site, or treated, stored or disposed of at or in connection with the Site, after the Assistant Regional Administrators sign this Consent Decree, other than as provided in the ROD, the SOW, this Consent Decree, or any plans or manuals approved by EPA under the UAO or this Consent Decree, or as otherwise directed by EPA;

d.      liability based upon the Settling Defendants' transportation, treatment, storage or disposal, or arrangement for the transportation, treatment, storage or disposal, after the Assistant Regional Administrators sign this Consent Decree, of Waste Material at or in connection with the Site, other than as provided in the ROD, the SOW, this Consent Decree, any plans or manuals approved by EPA under the UAO or this Consent Decree, or otherwise as directed by EPA;

e.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f.      criminal liability;

g.      liability for violations of federal or state law that occur during or after implementation of the Remedial Action; and

h.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15 (Modification of the SOW or Related Work Plans).

92.     Work Takeover.  In the event EPA determines that the Work Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or

late in their performance of the Work, or are implementing the Work in a manner which may

cause an endangerment to human health or the environment, EPA may assume the performance

of all or any portions of the Work as EPA determines necessary, upon written notice to the Work

Settling Defendants with a copy to the Other Settling Defendants.  The Work Settling

Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph

73, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph.

Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be

considered Future Response Costs that the Work Settling Defendants shall pay pursuant to

Section XVI (Payment for Response Costs).

93.     Notwithstanding any other provision of this Consent Decree, the United States

retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII.  COVENANTS BY SETTLING DEFENDANTS

94.     <u>Covenant Not to Sue</u>.  Except as expressly provided in Section XIX (Dispute

Resolution) of this Consent Decree, and subject to the reservations in Paragraphs 22 and 95, the

Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of

action against the United States with respect to the Site, and Past Response Costs and Future

Response Costs as defined herein, or this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the Hazardous

Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507)

through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.      any claims against the United States, including any department, agency or

instrumentality of the United States under CERCLA Sections 107 or 113, related to the Site; or

    c.  any claims against the United States arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Colorado Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

  95.  Except as provided in Paragraph 98 (Waiver of Claims Against *De Micromis* Parties), Paragraph 99 (Waiver of Claims Against De Minimis Parties) and Paragraph 105 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 88 and 89 and 91.b-g., but only to the extent that the Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

  96.  The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims

that are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

97.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

98.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to the Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

a.     any materials contributed by such person to the Site constituting Municipal Solid Waste (MSW) or Municipal Sewage Sludge (MSS) did not exceed 0.2% of the total volume of waste at the Site; and

b.     any materials contributed by such person to the Site containing hazardous substances, but not constituting MSW or MSS, did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

c.     This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a

Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

99.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action they may have for all matters relating to the Site, including for contribution, against any person that has entered into a final CERCLA Section 122(g), 42 U.S.C. § 9622(g), *de minimis* settlement with EPA with respect to the Site as of the Effective Date.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

100.     The Work Settling Defendants hereby certify that each of the Other Responsible Parties has entered into a settlement agreement with the Work Settling Defendants with respect to the Site in which that Other Responsible Party has agreed not to assert any claims with respect to the Site.  In consideration of Plaintiff's covenant not to sue and contribution protection for the Other Responsible Parties with respect to Past Response Costs, in the event that any Other Responsible Party should file a claim and recover against the United States for contribution under Sections 107 or 113(f) of CERCLA, 42 U.S.C. §§ 9607 or 9613(f), or file a claim and recover against the Hazardous Substance Superfund pursuant to Section 106(b)(2) of CERCLA, 42 U.S.C. § 9606(b)(2), the Work Settling Defendants shall reimburse the United States or Hazardous Substance Superfund, respectively, for the amount paid by the United States to such Other Responsible Party.

## XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

101.    Except as provided in Paragraph 98 (Waiver of Claims Against De Micromis Parties) and Paragraph 99 (Waiver of Claims Against *De Minimis* Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree, a Covenant Beneficiary or an Other Responsible Party.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Except as provided in Paragraph 98 (Waiver of Claims Against De Micromis Parties) and Paragraph 99 (Waiver of Claims Against *De Minimis* Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto, a Covenant Beneficiary or Other Responsible Party.

102.    The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree.  The "matters addressed" in this Consent Decree are Past Response Costs, Future Response Costs, the work required under the UAO and the Work as defined herein.  The "matters addressed" in this settlement do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against the Settling Defendants coming within the scope of such

reservations.  The Parties further agree that by entering this Consent Decree this Court finds, that the Covenant Beneficiaries and the Other Responsible Parties are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for reimbursement of Past Response Costs.

103.    The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree, they will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim.

104.    The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing the United States within ten (10) days of service of the complaint on them.  In addition, the Settling Defendants shall notify the United States within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

105.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, the Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV. ACCESS TO INFORMATION

106.     Subject to Paragraph 107 (Business Confidential and Privileged Documents), the Work Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. The Work Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

107.     Business Confidential and Privileged Documents.

a.     The Work Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to the United States under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA shall be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified the Work Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to the Work Settling Defendants.

b.      The Work Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Work Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the United States with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information:  and (6) the privilege asserted by the Work Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

108.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  RETENTION OF RECORDS

109.    Until ten (10) years after the Work Settling Defendants' receipt of EPA's notification pursuant to Subparagraph 53.d. of Section XIV (Certification of Completion of the Remedial Action), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site; provided, however, that the Settling Defendants who are potentially liable as owners or operators of the Site shall retain, in addition, all documents and

records that relate to the liability of any other person under CERCLA with respect to the Site. Each Work Settling Defendant shall also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work; provided, however, that each Work Settling Defendant (and its contractors and agents) shall retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.  Notwithstanding the foregoing, the Work Settling Defendants shall preserve and maintain all non-identical copies and records and documents created with respect to Operation and Maintenance activities at the Site for a period of five (5) years after each such documents is first created.

110.    At the conclusion of the document retention period, the Settling Defendants shall notify the United States at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the United States, the Settling Defendants shall deliver any such records or documents to EPA.  The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If a Settling Defendant asserts such a privilege, it shall provide the EPA with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a

description of the subject of the document, record, or information; and (6) the privilege asserted by the Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

111.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. NOTICES AND SUBMISSIONS

112.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re:  DJ # 90-11-2-93/1

and

Assistant Regional Administrator (8EPR)
Office of Ecosystem Protection and Remediation
United States Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202-2466

As to EPA:

Bonnie Lavelle
EPA Project Coordinator
Russell LeClerc
Alternate EPA Project Coordinator
Lowry Landfill Superfund Site
United States Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202-2466

As to the Regional Financial
Management Officer:

EPA Financial Management Officer (TMS)
Region 8
999 18th Street, Suite 300
Denver, CO 80202-2466

As to the Work Settling
Defendants:

Steven D. Richtel
Project Coordinator
Lowry Landfill Superfund Site
Waste Management of Colorado, Inc.
Chemical Waste Management, Inc.
8310 South Valley Highway, Suite 200
Englewood, CO  80112-5806

and

Dave Wilmoth
Project Coordinator
Lowry Landfill Superfund Site
City and County of Denver
Department of Environmental Health
Environmental Services Division
201 West Colfax, Dept. 1009
Denver, CO  80202

## XXVII.  Effective Date/termination of uao

113.     The Effective Date of this Consent Decree shall be the date upon which the Court

enters this Consent Decree, except as otherwise provided herein.  The Administrative Order for

Remedial Design/Remedial Action, Docket No. CERCLA VIII-95-05, issued by EPA on

November 18, 1994, effective on December 19, 1994, shall on the Effective Date of the Consent

Decree terminate and have no further force or effect.

## XXVIII.  Retention of Jurisdiction

114.     This Court retains jurisdiction over both the subject matter of this Consent Decree

and the Settling Defendants for the duration of the performance of the terms and provisions of

this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any

time for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with

its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX.  Appendices

115.     The following appendices are attached to and incorporated into this Consent

Decree:

"Appendix A" is the Record of Decision, the Minor Modifications and the ESDs.

"Appendix B" is the ROD Amendment.

"Appendix C is the SOW.

"Appendix D" is the map of the Site.

"Appendix E" is the complete list of the Settling Defendants.

"Appendix F" is the complete list of the Other Responsible Parties.

"Appendix G" is the complete list of the Covenant Beneficiaries.

"Appendix H" is the Covenant Beneficiary Election Form.

## XXX. COMMUNITY RELATIONS

116.    The Work Settling Defendants shall continue to participate in community relations as described in the Community Relations Plan and any updates or addenda approved or developed pursuant to the UAO.  EPA may, in its discretion, and in consultation with the Work Settling Defendants, modify the Community Relations Plan and change the role of the Work Settling Defendants under the Plan.  The Work Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, the Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

117.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Work Settling Defendants.  All such modifications shall be made in writing.

118.    Except as provided in Paragraph 15 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, the Work Settling Defendants and the Court, if such modifications would fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii).  Prior to providing its approval to any such modification, the United States shall provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Work Settling Defendants.

119.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

120.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. The Settling Defendants consent to the entry of this Consent Decree in the form presented without further notice.

121.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

122.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

123.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

124.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. The Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XXXIV. FINAL JUDGMENT

125.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations,

agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

126.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 16 DAY OF November, 2005.

s/Edward W. Nottingham
HON. EDWARD W. NOTTINGHAM
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

8/19/05 _____          s/ Kelly A. Johnson _____
Date                                     KELLY A. JOHNSON
                                         Acting Assistant Attorney General
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         Washington, D.C.  20530


8/19/05 _____          s/ Daniel S. Smith _____
Date                                     ELLIOT ROCKLER
                                         DANIEL SMITH
                                         Environmental Enforcement Section
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         P.O. Box 7611
                                         Ben Franklin Station
                                         Washington, D.C. 20044-7611
                                         1425 New York Ave.
                                         Washington, D.C.  20005
                                         202-305-0371 (voice)
                                         202-616-6583 (fax)
                                         elliot.rockler@usdoj.gov
                                         dan.smith2@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al*., relating to the Lowry Landfill Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

8/18/2005
Date

s/ Carol Rushin

CAROL RUSHIN
Assistant Regional Administrator
Office of Enforcement, Compliance and
   Environmental Justice
U.S. Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202-2466

8/18/05
Date

s/ Max Dodson

MAX DODSON
Assistant Regional Administrator
Office of Ecosystems Protection and Remediation
U.S. Environmental Protection Agency
Region 8
999 18th Street, Suite 300
Denver, CO  80202-2466

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

**FOR THE CITY AND COUNTY OF DENVER**

COLE FINEGAN
Attorney for the City and County of Denver

Date: 8/19/05          By: s/ T. Shaun Sullivan
                       T. SHAUN SULLIVAN
                       Assistant City Attorney
                       City and County of Denver
                       Department of Law
                       201 West Colfax Street – Dept. 1207
                       Denver, CO  80202

Date: 8/19/05          By: s/ Nancy J. Severson
                       NANCY J. SEVERSON
                       Manager of Environmental Health
                       City and County of Denver
                       201 West Colfax Street – Dept. 1009
                       Denver, CO  80202

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:
Title:          City Attorney
Address:        City and County of Denver
                Department of Law
                1437 Bannock Street, R. 353
                Denver, CO  80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al*., relating to the Lowry Landfill Superfund Site.

**FOR WASTE MANAGEMENT OF COLORADO, INC.**

Aug. 19, 2005
Date

Signature: s/ Steven D. Richtel

Name (Print): Steven D. Richtel

Title: Area Director

Address: 8310 S. Valley Hwy., Suite 200

Englewood, Colorado 80112

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): The Corporation Company

Title: Registered Agent

Address: 1675 Broadway

Denver, Colorado 80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

**FOR CHEMICAL WASTE MANAGEMENT, INC.**

Aug. 19, 2005
Date

Signature: s/ Steven D. Richtel

Name (Print): Steven D. Richtel

Title: Area Director

Address: 8310 S. Valley Hwy., Suite 200

Englewood, Colorado 80112

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): The Corporation Company

Title: Registered Agent

Address: 1675 Broadway

Denver, Colorado 80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

### FOR ADOLPH COORS COMPANY

August 22, 2005
Date

Signature: s/ Samuel D. Walker

Name (Print): Samuel D. Walkler

Title: Global Chief Legal Officer, Secretary

Address: 17735 W. 32nd Avenue, MCCC

Golden, CO 80401-0030

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): Corporation Service Company

Title:

Address: 2711 Centerville Road, Suite 400

Wilminton, DE  19808

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

### FOR CONOCOPHILLIPS COMPANY

August 19, 2005 _____
Date

Signature: s/ William A. Kitchen _____

Name (Print): William A. Kitchen _____

Title: Mgr. – Risk Management & Remediation _____

Address: 600 N. Dairy Ashford _____

Threadneedle 5022 _____

Houston, Texas 77079 _____

_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): United States Corporation Company _____

Title: _____

Address: 2711 Centerville Road _____

Suite 400 _____

Wilmington, DE 19808 _____

_____

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al*., relating to the Lowry Landfill Superfund Site.

**FOR METRO WASTEWATER**
**RECLAMATION DISTRICT**

August 18, 2005
Date

Signature: s/ Robert W. Hite

Name (Print): Robert W. Hite

Title: District Manager

Address: 6450 York St.

Denver, CO 80229-7499

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): Robert J. Thomas

Title: Director of Legal Department

Address: 6450 York St.

Denver, CO 80229-7499

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al*., relating to the Lowry Landfill Superfund Site.

### FOR ROCHE COLORADO CORPORATION

19/AUG/05
Date

Signature: s/ Donald R. Fitzgerald

Name (Print): Donald R. Fitzgerald

Title: Vice President

Address: 2075 North 55th Street

Denver, CO 80301


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): The Corporation Company

Title:

Address: 1675 Broadway

Denver, CO 80202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. City and County of Denver, *et al.*, relating to the Lowry Landfill Superfund Site.

**FOR S.W. SHATTUCK CHEMICAL CO., INC.**

August 19, 2005
Date

Signature: s/ Ellen T. O'Brien

Name (Print): Ellen T. O'Brien

Title: President

Address: 1805 South Bannock St.

Denver, CO. 80223

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (Print): John D. Faught, Esq.

Title: Attorney At Law

Address: 379 Detroit Street

Denver, CO. 80206